**In re the Marriage of Debra L. PRYOR, Appellant–Respondent,**

**v.**

**John H. PRYOR, Appellee–Petitioner.**

**No. 62A01–9806–CV–226.**

Court of Appeals of Indiana.

April 29, 1999.

Sean C. Lemieux, Indiana Civil Liberties Union, Indianapolis, Indiana, Attorney for Appellant.

Michael H. Hagedorn, Tell City, Indiana, Attorney for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Respondent Debra L. Pryor (Debra) appeals the trial court order grant-ing custody of her minor child, A., to John H. Pryor (John), her former husband and the child's biological father.

We remand and retain jurisdiction.

### ISSUES

Debra raises two issues for our review which we restate as follows:

1. Whether the trial court had jurisdic-tion to determine the custody of A. pursu-ant to the Uniform Child Custody Jurisdic-tion Act (UCCJA). Ind.Code §§ 31–17–3–1 et seq.

2. Whether the trial court order grant-ing custody of A. to John was in violation of the Equal Protection Clause of the 14th Amendment because the court's decision was improperly based upon Debra's per-ceived sexual orientation.

### FACTS AND PROCEDURAL HISTORY

On February 4, 1998, John filed a "Petition of Dissolution of Marriage" and "Motion for Provisional Order and Temporary Restrain-ing Order Without Notice" in the Perry County Circuit Court. That same day, the court rendered an order granting the tempo-rary restraining order and granted John temporary custody of A. On February 9, 1998, Debra received from the Perry Circuit Court its "Order Granting Temporary Re-straining Order" via certified mail at her home in Kentucky, summoning her to attend a provisional hearing on February 18, 1998.

On February 12, 1998, Debra filed a peti-tion for dissolution of marriage and custody of A. in the Ohio Circuit Court of Kentucky. In her petition, Debra stated that John had filed an action in Indiana and that she had received the temporary restraining order and summons to appear in the Perry Circuit Court.

On February 18, 1998, the Indiana court held its provisional hearing. Both John and Debra appeared, but Debra appeared with-out counsel. Debra failed to notify the court that she had filed a petition in Kentucky for dissolution of marriage and custody of A. The Indiana court rendered a provisional order

granting John temporary custody of A. and ordered Debra to deliver physical custody to John on February 21, 1998, at Debra's residence in Kentucky. However, on February 19, 1998, the Kentucky court entered an ex parte order granting temporary custody to Debra and scheduled a full hearing for March 4, 1998.

On February 21, 1998, John went to Debra's residence to get A., but Debra claimed she had custody of A. pursuant to the Kentucky court order. Therefore, on February 23, 1998, John filed a "Petition for Citation of Contempt" because Debra refused to deliver physical custody of A. On February 27, 1998, the court entered an order for Debra to appear in the Perry Circuit Court on March 3, 1998 for a hearing on the petition for citation of contempt. On March 3, 1998, Debra failed to appear at the hearing and the court entered a contempt judgment, again ordering Debra to deliver custody and ordering the clerk to issue a warrant for Debra's arrest.

On March 10, 1998, Debra filed a "Motion for Relief from Orders and to Stay Proceedings" in the Indiana court. In her motion, Debra, for the first time, notified the Indiana court that she had filed a petition for custody of A. and a Kentucky court had granted her temporary custody of A. Debra claimed that John's petition for dissolution of marriage was incorrect because she had not resided in Perry County for three months and in Indiana for more than six months before John filed the petition on February 4, 1998. Debra contended that she and A. moved to Kentucky on February 28, 1997 and A. had been enrolled in school in Kentucky since that date. Therefore, she claimed that Kentucky was A.'s "home state" for jurisdictional purposes. Debra's motion was denied.

On May 14, 1998, a final hearing was held in the Perry Circuit Court and a "Decree for Dissolution of Marriage" was entered on May 29, 1998. The decree stated that the court had jurisdiction over the subject matter and the parties to the action and granted custody to John. Debra now brings this appeal.

## DISCUSSION AND DECISION

### I. Jurisdiction

Debra argues that the trial court lacked jurisdiction to determine the custody of A. because it failed to follow the provisions of the UCCJA. Specifically, Debra contends that the trial court failed to uphold its affirmative duty to question its jurisdiction when it discovered that the custody dispute had an interstate dimension. Further, Debra alleges that the trial court was not competent to make a custody determination regarding A. because none of the four jurisdictional provisions of Ind.Code § 31–17–3–3 were met.

The UCCJA sets out the method to determine jurisdiction. *Williams v. Williams*, 555 N.E.2d 142, 145 (Ind.1990). Under the UCCJA, an Indiana court has an affirmative duty to question its jurisdiction when it becomes aware of an interstate dimension in a child custody dispute. *Ashburn v. Ashburn*, 661 N.E.2d 39, 41 (Ind.Ct.App. 1996). The trial court must first determine whether it has jurisdiction, and, if it does, whether to exercise that jurisdiction. *Id.* In determining whether a trial court has improperly exercised jurisdiction under the UCCJA, we apply an abuse of discretion standard. *Moody v. Moody*, 488 N.E.2d 378, 381 (Ind.Ct.App.1986). An abuse of discretion will occur when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind.1993). The jurisdictional portion of the UCCJA states:

Sec. 3. Jurisdiction. (a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this state and the child has been abandoned; or

(4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a) physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody.

Ind.Code § 31–17–3–3.

 Additionally, IND. CODE 31–17–3–2(5) defines "home state" as "the state in which the child, immediately proceeding the time involved, lived with his parents, a parent, or a person acting as a parent, for at least six (6) consecutive months, ... Periods of temporary absence of any of the named persons are counted as part of the six (6) months or other period." "By definition, if the child has a 'home state' other than Indiana, jurisdiction may not be had in Indiana under [Ind.Code § 31–17–3–]3(a)(4) unless the home state has declined its jurisdiction." *Horlander v. Horlander,* 579 N.E.2d 91, 95 (Ind.Ct.App.1991). Moreover, once the trial court determines that it has subject matter jurisdiction, that court retains jurisdiction so long as a "significant connec-

tion" remains between the controversy and the state. As stated by this court:

> [t]he fundamental principle underlying the UCCJA is that once a court with a jurisdictional basis exercises jurisdiction over a "custody" issue, that court retains exclusive jurisdiction over all custody matters so long as a "significant connection" remains between the controversy and the state.... A "significant connection" remains under the scheme as long as one parent continues to reside in the state rendering the initial determination.

*Matter of E.H.,* 612 N.E.2d 174, 185 (Ind.Ct. App.1993), *opinion adopted,* 624 N.E.2d 471 (Ind.1993). However, it is only when the "home state" test does not apply to the facts that the "significant connection" test found in Ind.Code § 31–17–3–3(a)(2) may be used to provide an alternative basis for subject matter jurisdiction. *Horlander,* 579 N.E.2d at 97. Thus, the "significant connections" standard referred to in *Matter of E.H.* is the jurisdictional standard which has been applied as a basis for continuing jurisdiction over all custody matters only after that court obtains a jurisdictional basis to exercise jurisdiction over the case.

 In the case at hand, because we find that the Perry Circuit Court was aware at the outset of the proceedings that Debra was living in Kentucky with A., the court was on notice of the interstate dimension of this case and was therefore required to make a determination of its subject matter jurisdiction pursuant to the UCCJA. According to the "Agreed Statement of Evidence and Proceedings," John testified at the February 18, 1998 Provisional Hearing that Debra and A. had lived in Kentucky for approximately one year since John and Debra separated in February, 1997. Therefore, Indiana was not A.'s home state at the time of the commencement of the custody proceeding and so the Perry Circuit Court did not have jurisdiction to make a child custody determination pursuant to the "home state" standard enumerated in Ind. Code § 31–17–3–3(a)(1). Furthermore, because Indiana was not A.'s home state and because there is no evidence in the record to indicate whether Kentucky declined its juris-

diction,[1] the Perry Circuit Court improperly exercised its jurisdiction by making a custody determination before it performed its affirmative duty to question its jurisdiction in this interstate custody dispute. Thus, we must remand this case for the trial court to conduct a further hearing in order to make a determination whether Indiana or Kentucky has jurisdiction or whether Kentucky declined its jurisdiction as John's counsel alleges.

## II. *Sexual Orientation*

 Next, Debra contends that the trial court erred because its custody determination was improperly based upon the perceived sexual orientation of Debra, and therefore is in violation of the Equal Protection Clause of the 14th Amendment. Specifically, Debra claims that the trial court relied solely on the fact that she is a lesbian to decide A.'s custody. Debra argues that the only reason John gave to the court for seeking custody of A. was that John believes Debra is a lesbian and fears A. will be teased because of Debra's sexual orientation. Essentially, Debra argues that the trial court punished her because of her perceived sexual orientation. Although we decline to rule upon the merits of this claim until the trial court has made its jurisdictional determination, we find it necessary to provide the trial court with the instruction that sexual orientation as a single parental characteristic is not sufficient to render that parent unfit to retain physical custody of a child.

 As we stated in *D.H. v. J.H.*, "homosexuality standing alone without evidence of any adverse effect upon the welfare of the child does not render the homosexual parent unfit as a matter of law to have custody of the child." 418 N.E.2d 286, 293 (Ind.Ct.App. 1981). In the present case, there was no evidence presented of any homosexual activity by Debra in the presence of A., and no evidence of any adverse effect upon A.'s welfare as a result of Debra's homosexuality.

However, a trial court shall determine custody and enter a custody order in accordance with the best interests of the child, and in determining the best interests of the child, there is no presumption favoring either parent. Ind.Code § 31–17–2–8.

## CONCLUSION

The threshold issue remains whether the Perry Circuit Court properly exercised its jurisdiction when the record does not reveal whether the court performed its affirmative duty to conduct a jurisdictional determination after it became aware of the interstate dimension of this case. Therefore, we retain jurisdiction of this case, but remand and order the Perry Circuit Court to conduct a jurisdictional inquiry pursuant to the UCCJA and to report to this court the results of this inquiry within thirty days. However, pending the determination of the Perry Circuit Court's jurisdiction, we will not modify the custody order previously granted by that court until jurisdiction has been determined. We retain jurisdiction in order to determine the validity of the custody order if Indiana has jurisdiction pursuant to the UCCJA.

We remand with instructions and retain jurisdiction.

SULLIVAN, J., and MATTINGLY, J., concur.

---

1. The record reveals that at the Final Hearing on May 14, 1998, John's counsel stated that the Kentucky court had formally entered an order staying its proceedings and deferring to the Perry Circuit Court to exercise its jurisdiction in this case. However, John's counsel was unable to provide the court with an executed copy of this order. Therefore, because this order is not included in the record it will not be considered in our decision.