Stephan J. MEYER, Appellant–
Petitioner,

v.

Kimberly Michelle MEYER,
Appellee–Respondent.

No. 49A02–0011–CV–712.

Court of Appeals of Indiana.

Oct. 19, 2001.

Steven T. Fulk, Fulk & Allain, Indianapolis, Indiana, Attorney for Appellant.

Terry R. Curry, Butler, Schembs, Curry & Johnson, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Stephan J. Meyer appeals the trial court's dismissal of his petition for custody of L.K., a minor child born to his ex-wife, Kimberly Michelle Meyer, prior to her marriage to him. He raises two issues on appeal: 1) whether the trial court erred in granting Kimberly's motion to dismiss for lack of jurisdiction, and 2) whether the trial court erred in not transferring the custody action to juvenile court. We affirm.

### FACTS AND PROCEDURAL HISTORY

Stephan and Kimberly were married on February 23, 1991, and had two children during their marriage. In addition, L.K., who was born on February 6, 1988, resided with Stephan and Kimberly throughout their marriage. On April 2, 1997, Stephan filed a petition for dissolution of marriage in Marion County. The trial court ordered dissolution of the marriage and awarded custody of the two children of the marriage to Stephan on March 11, 1999. Nei-

ther party sought custody of L.K. in the divorce pleadings; nor did the final order address her custody.[1]

In either June or July of 1999,[2] Kimberly and L.K. moved to Rhode Island, and Stephan and the two children of the marriage continued to reside in Indiana. On January 14, 2000, Stephan filed a petition seeking custody of, or visitation with, L.K. Kimberly filed a motion to dismiss that petition on July 10, 2000, and the trial court granted that motion without hearing on July 11, 2000. Stephan now appeals.

## DISCUSSION AND DECISION

■ We first note that Stephan argues the petition for custody of L.K. should be considered as a continuation of the previous dissolution action, giving the trial court jurisdiction over the issue. We disagree. The trial court did not have continuing jurisdiction over the matter of L.K.'s custody. L.K. is not a child of the marriage, and the record does not indicate that the issue of her custody has ever been previously litigated in Indiana or anywhere else. Therefore, the petition for custody of L.K. began a new action, independent of the previous dissolution and custody litigation between the parties, and we will review it as such.[3]

### 1. Dismissal of the Petition

■ An Indiana court's jurisdiction to decide custody matters having interstate dimensions, such as the instant case, is governed by the Uniform Child Custody Jurisdiction Act (UCCJA). A trial court must first determine in such cases whether it has jurisdiction and, if it does, whether to exercise that jurisdiction. Upon review of such determinations, we apply an abuse of discretion standard. *Moore v. Miller*, 675 N.E.2d 755, 758 (Ind.Ct.App.1997).[4]

---

1. The only mention of L.K. in the record prior to Stephan's petition for custody is in a preliminary order dated July 1, 1997: "The Court admonishes the parties to treat the third child which is not of the marriage ... the same as she has always been treated before separation; the three children are not to be treated separately or differently from one another...." (R. at 24.) L.K.'s natural father is not a party to this action, and he is not mentioned or identified in the record or on appeal.

2. Stephan alleges L.K. lived with him in Indiana until July 28, 1999, and Kimberly alleges she and L.K. moved to Rhode Island on June 7, 1999.

3. We note that even if this action were a continuation of the previous divorce proceedings, the trial court would still be obligated to perform an independent analysis under the Uniform Child Custody Jurisdiction Act (UCCJA). "[A] state may have jurisdiction to enter a dissolution decree, but such does not necessarily confer jurisdiction to make a child custody determination. Rather, jurisdiction over custody matters having an interstate dimension must be independently determined by application of that state's version of the

Uniform Act." *Stevens v. Stevens*, 682 N.E.2d 1309, 1312 (Ind.Ct.App.1997).

4. We note this standard of review is much more deferential than the normal standard of review in Ind. Trial Rule 12(b)(1) cases, which is as follows: The standard of review is dependent upon: (i) whether the trial court resolved disputed facts; and (ii) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a "paper record." Where, as here, the facts are in dispute but the trial court ruled on a paper record without conducting an evidentiary hearing, then no deference is afforded the trial court's factual findings or judgment because under those circumstances a court of review is in as good a position as the trial court to determine whether the court has subject matter jurisdiction. Thus, we review *de novo* a trial court's ruling on a motion to dismiss where the facts before the court are disputed and the trial court rules on a paper record. In so doing, we will affirm the judgment of the trial court on any legal theory the evidence of record supports. The ruling of the trial court is presumptively correct, and we will reverse on the basis of an incorrect factual finding only if the appellant persuades us that the balance of evidence is tipped

An abuse of discretion will occur when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Ashburn v. Ashburn,* 661 N.E.2d 39, 41 (Ind.Ct.App. 1996).

■ We presume the trial court performed its affirmative duty to examine the question of its subject matter jurisdiction in this interstate custody dispute. *Pryor v. Pryor,* 709 N.E.2d 374, 376 (Ind.Ct.App. 1999). Thus, we consider whether the Indiana court had jurisdiction under Ind. Code § 31–17–3–3, part of Indiana's version of the UCCJA. Stephan presents an argument under subsections (1) and (2) of this statute.

■ Under Ind.Code § 31–17–3–3(a)(1)(A), Indiana may have jurisdiction in this matter if Indiana was L.K.'s home state at the time of Stephan's petition. "Home state" is defined in Ind.Code § 31–17–3–2(5) as "the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months. . . . Periods of temporary absence of any of the named persons are counted as part of the six (6) month . . . period." Given that L.K. had not resided in Indiana for either five and a half or six months prior to Stephan's petition, Indiana cannot be L.K.'s home state under this definition. Prior decisions of this court have clarified that, pursuant to Ind. Code § 31–17–3–2(5), when a child is visiting a parent in a state other than the custodial parent's home state, the time so spent is a "temporary absence" and is to be regarded as if the child had never left the custodial parent's state of residence. *Stewart v. Stewart,* 708 N.E.2d 903, 906 (Ind.Ct.App.1999). Kimberly's relocation with L.K. either five and a half or six

months prior to Stephan's petition was more than a "period of temporary absence" under this definition. Thus, this subsection does not provide a basis for jurisdiction.

■ Under Ind.Code § 31–17–3–3(a)(1)(B), Indiana may have jurisdiction if Indiana "had been [L.K.'s] home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, *and a parent or person acting as parent continues to live in this state.*" (Emphasis supplied.) Ind.Code § 31–17–3–2(9) defines "person acting as parent" as "a person, other than a parent, who *has physical custody* of a child and who has either been awarded custody by a court or claims a right to custody." (Emphasis supplied.) Under this definition, Stephan cannot be a "person acting as parent" because he does not have physical custody of L.K. Thus, Indiana is not the "home state" of L.K. under either part of this subsection.

■ Next, under Ind.Code § 31–17–3–3(a)(2), Indiana may have jurisdiction "if (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." This court has previously established that the "significant connection" test in Ind.Code § 31–17–3–3(a)(2) may be applied only when the child does not have a home state, so that the "home state" test set out in subsection (a)(1), above, does not apply. *Stevens v. Stevens,* 682 N.E.2d 1309, 1313 (Ind.Ct. App.1997). Under the facts in our case, either L.K. had lived in Rhode Island for

against the trial court's findings. *GKN Co. v. Magness,* 744 N.E.2d 397, 401 (Ind.2001).

over six months at the time Stephan filed his action, in which case Rhode Island, not Indiana, was L.K.'s home state, or L.K. did not have a home state because she had been in Rhode Island for slightly less than six months. For our purposes on review, we assume Stephan's allegation regarding the date Kimberly and L.K. left the state is true, and we consider whether Indiana may have had jurisdiction under this subsection.

Ind.Code § 31–17–3–2(1) defines "contestant" as "a person, including a parent, who claims a right to custody or visitation rights with respect to a child." Stephan is a contestant under this definition, and Stephan clearly has a significant connection with Indiana. What is not so clear to us is whether L.K. has a significant connection with Indiana and whether there is available here substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

In his Verified Petition for Custody, Stephan alleged L.K. lived in Indiana during the parties' marriage and during a portion of the dissolution proceedings. Therefore, L.K. has a historical connection with Indiana. Next, we acknowledge that there is undoubtedly an emotional bond between Stephan and L.K., as well as between L.K. and her half-siblings, given their years of residence together as part of a household and family unit. We may even assume for our purposes here that Stephan acted as a caretaker toward L.K.

■ However, these facts, without more, do not convince us that the requirements of Ind.Code § 31–17–3–3(a)(2)(B) are satisfied. The term "substantial evidence" in the UCCJA is not intended to be used as a substitute for "some evidence"; rather, it is intended to require a high degree of connection and access to evidence. *In re Marriage of Miche,* 131 Ill. App.3d 1029, 87 Ill.Dec. 72, 476 N.E.2d 774 (1985). A purpose of the UCCJA is to assure that litigation concerning child custody ordinarily take place in the state "with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available[.]" Ind.Code § 31–17–3–1(a)(3).

Stephan alleged that he was L.K.'s guardian[5] from May 1989 until July 1999 and that Kimberly "voluntarily relinquished care and guardianship of the minor child to Petitioner, who through July 28, 1999, provided primary care and support for said child." (R. at 61–62.) In his Motion to Correct Error, Stephan alleges that Kimberly consented in writing to his guardianship, and he attaches to his motion an undated document entitled "Consent to Guardianship" that appears to be signed by Kimberly Meyer. (R. at 102, 108.)

Even if we accept as true the allegations in the pleadings in conjunction with our previously articulated policy of protecting the constitutional rights of parents to care for their children, *see Froelich v. Clark,* 745 N.E.2d 222, 228 (Ind.Ct.App.2001), *trans. denied,* we are unable to find that there is "substantial evidence concerning the child's present or future care, protection, training, and personal relationships" available in Indiana. We decline Stephan's invitation to recognize the presence in this state of a child's ex-step-father who has not clearly cared for the child alone for a significant portion of time as sufficient to satisfy this jurisdictional requirement.

---

**5.** Stephan does not directly allege he was a "guardian" as defined in Ind.Code § 29–3–1–6. Under this code section, a guardian is "a person who is a fiduciary and is appointed by a court to be a guardian or conservator responsible as the court may direct for the person or the property of an incapacitated person or a minor."

### 2. *Denial of Transfer to Juvenile Court*

██ We reject Stephan's second argument that under *Poulson v. Poulson*, 612 N.E.2d 193 (Ind.Ct.App.1993), the trial court should have transferred the case to juvenile court rather than dismissing the action. In that case, the action was transferred to juvenile court because the child was not a child of the marriage, and the trial court did not have continuing jurisdiction to decide disputes arising out of the dissolution proceedings. However, there was no interstate dimension to that case, as there is here. Where an Indiana trial court lacks jurisdiction to decide a custody issue because Indiana is not the proper forum in which to litigate the issue, the trial court is not obliged to transfer the cause to a different court in the same improper forum. Furthermore, Stephan is not prejudiced by this dismissal; he is free to bring his action in the appropriate state forum if that state's laws allow for such an action by a nonparent.

Affirmed.

SULLIVAN, J., and BARNES, J., concur.