David **WESTENBERGER,**
Appellant–Petitioner,

v.

Patricia **WESTENBERGER,**
Appellee–Respondent.

No. 03A01–0402–CV–60.

Court of Appeals of Indiana.

July 27, 2004.

Publication Ordered Aug. 13, 2004.

Transfer Denied Oct. 28, 2004.

Jeffrey L. Beck, Beck Harrison & Dalmbert, Columbus, IN, Attorney for Appellant.

Michael Thomasson, David M. Hooper, Thomasson & Thomasson, P.C., Columbus, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

David Westenberger appeals the trial court's decision that his petition to modify custody of his children should be heard in Arkansas, where the children now live with their mother, instead of Indiana. We affirm.

### Issue

The sole issue is whether the trial court abused its discretion in concluding that Arkansas would be a more convenient forum to hear David's petition to modify custody.

### Facts

David and Patricia Westenberger were married in 1995; two children were born during the marriage. The Westenbergers divorced in April 2002. Pursuant to an agreed order giving joint legal custody to the parties and primary physical custody to Patricia, she moved with the two children to Arkansas, with David having frequent visitation.

In July 2003, David moved to modify custody, alleging that Patricia's lifestyle, parenting ability, and home environment were detrimental to the children. On October 10, 2003, Patricia moved to transfer jurisdiction of the matter to Pulaski County, Arkansas, where she now lives with the children. After conducting a hearing on the matter, on December 23, 2003, the trial court concluded that Arkansas was the more appropriate forum to consider David's petition to modify custody and stayed the proceedings in Indiana conditioned upon David filing a modification petition in Arkansas. We have agreed to entertain an interlocutory appeal from this decision.

### Analysis

A trial court's jurisdiction to decide custody matters having interstate dimensions is governed by the Uniform Child Custody Jurisdiction Act ("UCCJA"). *Meyer v. Meyer*, 756 N.E.2d 1049, 1051 (Ind.Ct.App.2001). The court must first determine in such cases whether it has jurisdiction and, if it does, whether to exercise that jurisdiction. *Id.* We review determinations on such matters for an abuse of discretion. *Id.* An abuse of dis-

cretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* at 1052.

■ In the present case, there is no dispute that Indiana, as the state originally entering the custody order, still retained jurisdiction over this matter. Under the UCCJA, the court that first enters a custody decree on a matter has exclusive jurisdiction over child custody matters until the child and all parties have left the state. *In re Paternity of R.A.F.*, 766 N.E.2d 718, 723 (Ind.Ct.App.2002), *trans. denied.* Here, David still resided in Indiana; therefore, the Indiana trial court had jurisdiction over the modification petition.

However, Section 7 of the UCCJA provides that a court having jurisdiction under the UCCJA nevertheless "may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." Ind.Code § 31–17–3–7(a). "If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper...." I.C. § 31–17–3–7(e). There are a number of factors that a court may consider in determining whether another state is a more appropriate forum for deciding a child custody matter, including:

(1) if another state is or recently was the child's home state;

(2) if another state has a closer connection with the child and his family or with the child and one (1) or more of the contestants;

(3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) if the parties have agreed on another forum which is no less appropriate; and

(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 1 of this chapter.

I.C. § 31–17–3–7(c).

At the time David filed his modification petition, Patricia and the children had been living primarily in Arkansas for approximately fifteen months. Therefore, Arkansas qualified as the children's current "home state" for purposes of the UCCJA. *See* I.C. § 31–17–3–2(5) (defining "home state" as "the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months...."). On appeal, David does not dispute that Arkansas is currently the children's "home state."[1] This factor weighs in favor of Arkansas being the more appropriate forum for this action.

■■ It also appears from the facts in the record that substantial evidence concerning the children's present or future care, protection, training, and personal relationships is more readily available in Arkansas than in Indiana. As Patricia points out, in order to modify a custody order under Indiana law, David would bear the

---

1. David does claim in his brief that between April 2002 and July 2003, the children actually spent more time in Indiana than in Arkansas. However, he does not argue that Indiana, rather than Arkansas, is legally the children's "home state."

burden of demonstrating a substantial change in circumstances since the time of the original custody order. *See Kirk v. Kirk*, 770 N.E.2d 304, 306–07 (Ind.2002). "With respect to physical custody, a non-custodial parent must show something more than isolated acts of misconduct by the custodial parent to warrant a modification of child custody; he must show that changed circumstances regarding the custodial parent's stability and the child's well-being are substantial." *In re Paternity of M.J.M.*, 766 N.E.2d 1203, 1209 (Ind.Ct.App.2002). During a deposition, David indicated that he intended to challenge Patricia's current parental fitness based upon the children's day-to-day home and school environments in Arkansas. Clearly, evidence concerning such matters, as would be required to demonstrate a substantial change in circumstances warranting a change in custody, is much more readily ascertainable in Arkansas than in Indiana. Such evidence would come from friends, acquaintances, and teachers of Patricia and the children located in Arkansas. Patricia also lives near to several relatives, including her mother, in Arkansas.

We do not believe that transferring jurisdiction of this matter to Arkansas would contravene any of the stated purposes of Section 1 of the UCCJA, which are to:

(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that the courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) avoid re-litigation of custody decisions of other states in this state insofar as feasible;

(7) facilitate the enforcement of custody decrees of other states; and

(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child.

I.C. § 31–17–3–1. This was not a situation where one parent unilaterally removed or abducted a child from one jurisdiction and moved to another jurisdiction in an attempt to avoid an adverse custody decision issued by one court by litigating, or relitigating, the issue before another, potentially more "friendly" court. Patricia moved to Arkansas with the children well before David filed a petition to modify in Indiana. Arguably, Arkansas is now in the best position to determine the best interests of the children, given that at this point they have lived there for over two years and Patricia apparently intends to continue living there. We have already noted the substantial evidence of the children's care, education, and personal relationships that is now located in Arkansas as the result of a move to which David agreed in April

2002. We see no frustration of the UC-CJA's purposes in deferring to an Arkansas tribunal on the question of the proper custody arrangement for the Westenberger's children.

David cites a number of cases in his brief to support his contention that Indiana should not relinquish jurisdiction over child custody matters so long as at least one of the parties to the original order still resides in Indiana. We begin by noting that if that were the case, there would be little point in the UCCJA having an inconvenient forum provision. One of the parties still residing in Indiana is a minimum requirement for Indiana retaining exclusive jurisdiction over custody matters, but it should not be dispositive on the question of whether Indiana is a convenient forum or another state is a more appropriate forum. Otherwise, Section 7 of the UCCJA, Indiana Code Section 31–17–3–7, would be mere surplusage. If none of the original parties to a custody decree resided in Indiana, Indiana would no longer have exclusive jurisdiction in any event and there would be no need to resort to an inconvenient forum analysis.

We also observe that some of the cases David cites did not address or analyze Section 7 of the UCCJA and thus, they are not particularly helpful in the case before us. Additionally, some of the other cases were ones in which this court on appeal affirmed an Indiana trial court's decision not to relinquish jurisdiction over a custody matter. Given our deferential standard of review, those cases also are of limited guidance in determining whether the trial court in this case abused its discretion in deciding to relinquish jurisdiction in favor of Arkansas. An appellate court holding that a trial court did not abuse its discretion in making a decision in one case does not necessarily mean that a trial court *would* have abused its discretion if it had reached an opposite conclusion. *See Comer–Marquardt v. A–1 Glassworks, LLC,* 806 N.E.2d 883, 887 n. 2 (Ind.Ct.App.2004). Therefore, we will focus our discussion of the fact patterns of other cases to ones in which we reversed, as an abuse of discretion, a trial court's decision to relinquish jurisdiction over a custody matter to another court.

In *Horlander v. Horlander,* 579 N.E.2d 91, 98 (Ind.Ct.App.1991), *trans. denied,* we held that a trial court abused its discretion in declining to exercise jurisdiction over a child custody matter and finding that France was a more appropriate forum for the case. In that case, Indiana was still the children's "home state" because the wife had unilaterally moved to France with the children just two months before filing her petition for dissolution and custody in France. *Id.* The children had lived in Indiana their entire lives until that time; the father and his family all lived in Indiana; the father in seeking custody was relying on a medical condition for which the wife was treated in the United States; the mother in seeking custody was relying on the father's conduct in Indiana; the children had received medical care in Indiana; and the persons who knew the parties as a "family unit" all resided in Indiana. *Id.* We also stated that declining jurisdiction in favor of France would contravene the purposes of the UCCJL, which includes deterring the unilateral removal of children from one jurisdiction to another. *Id.*

Here, by contrast, it is uncontested that Arkansas, not Indiana, is currently the children's "home state" under the UCCJL. Additionally, there would be no deterrence of the unilateral removal of children by forcing this matter to be litigated in Indiana. As we have noted, Patricia moved to Arkansas with the children pursuant to an agreement of the parties em-

bodied in their divorce decree; it was David, not Patricia, who initiated this modification proceeding. Additionally, unlike in *Horlander*, there is substantial evidence of the children's care and relationships that is more readily available in another jurisdiction than in Indiana. This case also is a modification proceeding, not an initial custody proceeding as was the case in *Horlander*. Thus, while in *Horlander* the parties were on equal footing as to custody and a vast majority of the evidence as to who was a more appropriate parent was located in Indiana, in the present case David bears the burden of demonstrating that the present custody arrangement is inappropriate. To do so he must rely heavily on evidence located in Arkansas and facts that have arisen since the original custody order and Patricia's move in April 2002.

Another case in which we held a trial court abused its discretion in deferring a child custody matter to another jurisdiction is *Bowles v. Bowles*, 721 N.E.2d 1247, 1250 (Ind.Ct.App.1999). In that case, the father filed a dissolution and custody petition in Indiana in 1996. The mother subsequently moved with the child to Illinois without the father's knowledge; she also cross-petitioned for dissolution in the Indiana court. During the next two years, the parties participated in a number of hearings and a workshop in Indiana. The mother, father, and child also participated in three custody evaluations by a court-appointed evaluator. The trial court eventually set a final hearing date for March 4, 1999; on January 25, 1999, the custody evaluator filed her final report, recommending that the father have custody of the child. On February 25, 1999, the mother filed a dissolution and custody petition in Illinois. The Indiana court nevertheless conducted the final hearing on March 4, 1999. However, although it issued a final dissolution decree, it yielded jurisdiction over the custody matter to the Illinois court.

We reversed the trial court's jurisdictional decision. *Id.* at 1249–50. Our primary basis for doing so was that the case had been pending in Indiana for three years, the Indiana court had already heard evidence regarding custody and stood ready to make a decision, and it was in the child's best interest for the case to be resolved as quickly as possible. *Id.* at 1249. We also noted that the fact the child had lived in Illinois for the past two years and evidence concerning his care could be found there was irrelevant because counsel for mother had already gathered and presented evidence concerning the child's custody and care to the Indiana court. *Id.* at 1250. We concluded, "Mother seemed prepared to allow the Indiana court to proceed until she received the final, unfavorable custody evaluation." *Id.*

Again, there was no blatant attempt at forum shopping here as was the case in *Bowles*. Patricia was not faced with an imminent custody ruling that was likely to be unfavorable when she moved to transfer the case to Arkansas. Also, apparently no evidence had been gathered in this case, aside from taking the parties' depositions, nor had the trial court conducted any evidentiary hearings. Thus, unlike in *Bowles*, the fact that Arkansas is now the children's "home state" and that substantial evidence concerning their care and personal relationships can be found there is not irrelevant.

David points to some facts that arguably weigh in favor of Indiana maintaining jurisdiction over this proceeding, such as that he did not consent to it being litigated in Arkansas, that he would wish to call a number of Indiana residents to testify on his behalf in an evidentiary hearing on the matter, and that Indiana had fairly recent-

ly been the children's "home state" and that they had spent significant time in Indiana, even after formally moving to Arkansas. These facts might have supported a decision not to relinquish jurisdiction in this particular case. However, they do not invalidate the decision the trial court did make. In order to find an abuse of discretion, we must conclude that the trial court's action was clearly against the logic and effect of the facts and circumstances before it, or that it misinterpreted the law. *See Meyer*, 756 N.E.2d at 1051. We cannot say that the trial court's decision here meets those criteria.

## Conclusion

The trial court did not abuse its discretion in concluding that Indiana was an inconvenient forum and that it would be more appropriate to litigate David's petition to modify custody in Arkansas instead of Indiana. We affirm.

Affirmed.

CRONE, J., and BAKER, J., concur.

### *ORDER FOR PUBLICATION*

On July 27, 2004, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Motion to Publish. The Appellee states the decision clarifies a rule of law as it discusses when a motion for change of venue is warranted and therefore meets the criteria for publication pursuant to Appellate Rule 65(B).

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS

1. The Appellee's Motion to Publish is GRANTED, and this court's opinion heretofore handed down in this cause on July 27, 2004, marked Memorandum Decision,

Not for Publication in now ORDERED PUBLISHED.

All Panel Judges Concur.