Mary Ann NOVATNY, Appellant–
Petitioner,

v.

Christopher S. NOVATNY,
Appellee–Respondent.

No. 46A04–0612–CV–698.

Court of Appeals of Indiana.

Aug. 31, 2007.

674

Mary Ann Novatny, Virginia Beach, VA, Appellant pro se.

Craig V. Braje, Elizabeth A. Flynn Braje, Nelson & Janes, LLP, Michigan City, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Mary Ann Novatny ("Mother") appeals the trial court's order modifying the custody terms of her dissolution decree ("Modification Order"). Mother raises two issues for our review, and Christopher Novatny ("Father") cross-appeals and raises two other issues. We reorder and restate the issues, as follows:

1. Whether Mother's appeal should be dismissed because she did not comply with the Appellate Rules.

2. Whether the court erred when it determined that it had jurisdiction under the Uniform Child Custody Jurisdiction Act ("UCCJA").

3. Whether Mother should be ordered to pay appellate attorney fees due to her noncompliance with the Appellate Rules.

We vacate the judgment of the trial court.

### FACTS AND PROCEDURAL HISTORY

Mother married Father on December 22, 1990. The couple had two children: J.C.N., date of birth 8/7/91, and B.M.N.,

date of birth 12/16/93, and the family lived in Michigan City. On February 8, 1999, the trial court issued a Summary Decree of Dissolution of Marriage, which was amended on March 9. The court awarded physical custody of the children to Mother, and Father enjoyed parenting time and paid child support. Father moved to Illinois in September 2000.

Mother filed a Verified Notice of Intent to Move Child's Residence on August 22, 2003. Father objected, and the court held an evidentiary hearing. On September 15, the court overruled Father's objection and authorized Mother to move J.C.N. and B.M.N. to Virginia. On December 29, the court issued another order that modified child support.

Between February 2004 and October 2006, Mother lived in at least six different places, including a motel, with the children in Virginia. J.C.N. and B.M.N. were forced to change schools at least three different times because of the moves. Two of the homes Mother provided for the children occasionally had inadequate plumbing, and one of the homes was without electricity for a period of time. The school records for both children showed that their grades in school declined during this timeframe.

On August 22, 2006, Father, who lived in Illinois at that time, filed his Petition to Modify Custody and Child Support. The court set a hearing for October 24. Mother represented herself and moved to continue the hearing on October 20. Mother also filed an objection to the court's jurisdiction the day before the hearing. Mother objected that the court had no jurisdiction because all the parties had moved out of Indiana.

At the hearing, Father objected to any continuance, and Mother admitted that no other court had assumed jurisdiction in this case. The court then stated it would deny Mother's "[UCCJA] subject matter jurisdiction and inconvenient forum arguments and deny the motion to continue." Transcript at 9. The parties presented evidence, including grades and test scores for the children from their schools.

On November 2, the court issued its Modification of Child Custody and Matters Inherent Thereto. The court again denied Mother's request to transfer the case to a court in Virginia. The court found that it was in the children's best interests to modify custody due to a change in circumstances, specifically, Mother's "inability to maintain a stable residence, resulting in the need for the children to change schools on various occasions [that caused the children to] experience[ ] a significant decline in their academic performance." Appellant's App. at 2. Consequently, the court awarded physical custody to father on the condition that he "obtain a residence in northwest Indiana." *Id.*

This appeal ensued. Mother, again, represented herself, and she filed her Notice of Appeal on November 27, 2006, and her case summary on December 26. The trial court clerk filed the Notice of Completion of Clerk's Record on December 27, and the Notice of Completion of Transcript was received in the office of the Clerk of the Court of Appeals for the State of Indiana ("Clerk's office") on February 26, 2007.

Mother submitted her Appellant's Brief and Appendix on March 29. But neither document was filed. Rather, the Clerk's office returned those submissions to Mother because of defects. On April 16, Mother filed her Brief and her one volume Appendix and Supplemental Authority. She did not, however, serve a copy of any of those documents on Father.

On April 26, Father filed a Motion to Compel Service of Appellant's Brief, Appendix and Supplemental Authority and

for an Extension of Time to File Appellee's Brief. On May 7, we granted that Motion and ordered Mother to serve her Brief, Appendix and Supplemental Authority on Father. We also granted Father until May 31 to file his Appellee's Brief.

On May 31, Father submitted his Appellee's Brief.[1] However, at that time, Mother still had not provided Father with any of the relevant documents as ordered. In addition to responding to Mother's issues, Father asked that her appeal be dismissed and that he be awarded appellate attorney's fees. Since that time, Mother has submitted numerous documents and pleadings including a late Reply Brief, which did not respond to either issue raised by Father on cross-appeal.[2]

## DISCUSSION AND DECISION

### Issue One: Dismissal of Appeal

 Father contends that we should dismiss Mother's appeal "for failing to comply with the Court's Order and the Indiana Appellate Rules." Appellee's Brief at 11. Dismissing an appeal may be warranted where an appellant fails to substantially comply with the appellate rules. *Hughes v. King*, 808 N.E.2d 146, 147 (Ind. Ct.App.2004). However, as Father correctly notes, we prefer to resolve cases on the merits. *Id.* Mother did not substantially comply with the appellate rules or

our order that she do so. And she offers no excuse for her noncompliance.

 "If an appellant inexcusably fails to comply with an appellate court order, then more stringent measures, including dismissal of the appeal, would be available as the needs of justice might dictate." *Johnson v. State*, 756 N.E.2d 965, 967 (Ind. 2001). The needs of justice dictate that this case, which involves the modification of physical custody, be decided on its merits. Mother raises a significant issue on appeal that she properly preserved by a timely objection: the court had no jurisdiction under the UCCJA because she, the children, and Father had all moved from Indiana. Appellant's Brief at 4; Transcript at 7.

 Mother's noncompliance with our appellate rules includes instances of untimely filings, attempts to alter the record on appeal, and presentation of issues on appeal that were not before the trial court.[3] Such noncompliance can be dealt with by simply ignoring Mother's inappropriate requests. Further, Father was able to discern and address the issues that Mother raised despite her noncompliance. Thus, we consider whether the trial court had jurisdiction over Father's Petition.

### Issue Two: Jurisdiction

 Mother argues that the court had no jurisdiction over Father's Petition under the UCCJA[4] because neither the chil-

1. Father's Appellee's Brief apparently responds to Mother's Brief that was submitted—but not filed—on March 29, 2007, as he refers to a "Certificate of Service [ ] dated March 28, 2007." Appellee's Brief at 12.

2. In a separate order, we denied Mother's Motion for Leave to File Amended Brief, Motion for Leave to File a Belated Reply Brief, Motion to File Supplemental Appendix, and Motion to Correct Transcript.

3. Our decision to review the merits of this case is not impacted by Mother's self-repre-

sentation. It is well settled that *pro se* litigants are held to the same standard as licensed lawyers. *Payday Today, Inc. v. McCullough*, 841 N.E.2d 638, 644 (Ind.Ct. App.2006).

4. This set of laws is referred to in cases as both the Uniform Child Custody Jurisdiction Act or UCCJA, *see e.g., Westenberger v. Westenberger*, 813 N.E.2d 343, 344 (Ind.Ct.App. 2005), *trans. denied,* and the Uniform Child Custody Jurisdiction Law or UCCJL; *see e.g., Sudvary v. Mussard*, 804 N.E.2d 854, 856

dren nor the parties lived in Indiana. At the hearing, Mother objected to the court's jurisdiction as follows:

> I just believe that Indiana has adopted [the UCCJA] and that the purpose of it is to protect children from being shifted around from state to state and that Indiana doesn't have jurisdiction over my case because my children and I have been residents of Virginia for at least six months. And they go to school there, and I work there. And [Father] doesn't live in Indiana either. So we have no significant connections here. We don't work here, go to school here, or live here.

Transcript at 7. Father responded that "this matter does not fall within the act." He also argued that the court had jurisdiction because no other court had accepted jurisdiction of this case. The court questioned Mother, and she agreed that no other court had assumed jurisdiction in this case. The court ruled:

> Based on the allegations of the complaint-I don't necessarily concur totally with [Father's counsel's] analysis, but based on the allegations in the petition to modify custody, I will deny the [UCCJA] subject matter jurisdiction and inconvenient forum arguments and deny the motion to continue. And I want to emphasize that's in significant part because of the nature of the allegations upon which the petition to modify custody is based.

Transcript at 10.

The trial court's jurisdiction over custody matters with interstate dimensions is governed by the UCCJA, codified in Indiana Code Title 31–17.3.[5] *Westenberger*

*v. Westenberger*, 813 N.E.2d 343, 344 (Ind. Ct.App.2004), *trans. denied.* Indiana adopted the UCCJA to address important considerations, including: 1) avoiding competition and conflict among courts of different jurisdictions in matters of child custody; 2) promoting interstate cooperation in rendering custody decrees; and 3) deterring abductions and other unilateral removals of children undertaken to obtain custody awards. *In re Adoption of M.L.L.*, 810 N.E.2d 1088, 1091 (Ind.Ct. App.2004).

The jurisdictional provision reads:

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

> (1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

> (2) it is in the best · interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

---

(Ind.Ct.App.2004). We refer to these laws as the UCCJA.

**5.** In P.L. 138–2007, Section 45, the legislature repealed the Uniform Child Custody Jurisdiction Act contained in Chapter 3 of Title 31,

Article 17, and enacted the Uniform Child Custody Jurisdiction and Enforcement Act, contained in Article 21 of Title 31. Those changes became effective August 15, 2007.

(3) the child is physically present in this state and the child has been abandoned; or

(4)(A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a) physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody.

Ind.Code § 31–17–3–3 (2005).

 The court has an affirmative duty to question its jurisdiction in cases that involve interstate custody. *Hepner v. Hepner,* 469 N.E.2d 780, 784 (Ind.Ct.App. 1984). Once the court determines that it has subject matter jurisdiction, the court must then ascertain whether any other state has a pending custody proceeding. *Palm v. Palm,* 690 N.E.2d 364, 368 (Ind. Ct.App.1998), *trans. denied.* The court then must determine whether to retain or relinquish jurisdiction, and that decision is reviewed for an abuse of discretion. *Westenberger,* 813 N.E.2d at 343. An abuse of discretion will occur when the court has misinterpreted the law. *Sudvary v. Mussard,* 804 N.E.2d 854, 856 (Ind.Ct.App. 2004). When jurisdictional facts are not in dispute, however, the question of whether a trial court had jurisdiction is reviewed *de novo. Truax v. State,* 856 N.E.2d 116, 121–22 (Ind.Ct.App.2006).

The facts surrounding the court's jurisdictional determination are uncontested. On February 8, 1999, the trial court issued a Summary Decree of Dissolution of Marriage, which was amended on March 9. Subsequently, the court issued orders concerning custody and support, including the grant of Mother's request to relocate the children to Virginia in December 2003. Father filed his Petition to Modify, at issue here, on August 22, 2006, and the court held a hearing on October 24. At the hearing, Father testified that he lived in Chicago and that he had lived in Illinois since November 2000. Mother testified that she and the children moved to Virginia in February 2004 and continued to live there and that the children were not in Indiana at the time of the hearing.

 The court that first enters a custody decree on a matter gains exclusive jurisdiction, but that jurisdiction continues only until all parties and the children that were the subject of the decree have left the state. *In re Custody of A.N.W.,* 798 N.E.2d 556, 561 (Ind.Ct.App.2003), *trans. denied.*

The fundamental principle underlying the [UCCJA] is that once a court with a jurisdictional basis exercises jurisdiction over a "custody" issue, that court retains exclusive jurisdiction over all custody matters so long as a "significant connection" remains between the controversy and the state, and that court alone has discretion to decide whether it will defer jurisdiction to the court of another state upon the basis that the other court is a more convenient forum to litigate the issues. A "significant connection" remains under the scheme as long as one parent continues to reside in the state rendering the initial determination.

*Id.* at 561–62 (quoting *Matter of E.H.*, 612 N.E.2d 174, 185 (Ind.Ct.App.1993), *opinion adopted,* 624 N.E.2d 471 (Ind.1993)) (internal citations omitted).

Here, the court did not identify which portion of the UCCJA it relied upon to determine that it had jurisdiction. Nevertheless, none of the requirements of Indiana Code Section 31–17–3–3 are met, as discussed below, and that determination is. clearly erroneous. Indiana is not the children's home state as they moved to Virginia in February 2004 and continued to live there until the time of the hearing. Indiana Code § 31–17–3–2(5) defines "home state" as "the state in which the child, immediately proceeding the time involved, lived with his parents, a parent, or a person acting as a parent, for at least six (6) consecutive months ... Periods of temporary absence of any of the named persons are counted as part of the six (6) months or other period." I.C. § 31–17–3–2(5). Under the UCCJA as adopted in Indiana, Virginia would have qualified as the child's home state.

■ "[B]y definition, if the child has a 'home state' other than Indiana, then jurisdiction may not be assumed in Indiana unless the home state has declined its jurisdiction." *Hughes v. Hughes,* 665 N.E.2d 929, 932 (Ind.Ct.App.1996). *See also Pryor v. Pryor,* 709 N.E.2d 374, 377 (Ind.Ct.App.1999). Even though Virginia had not assumed jurisdiction of the case, there is no evidence that Virginia declined jurisdiction. Apparently, Virginia had never been requested to assume jurisdiction prior to the filing of Father's petition. Thus, the court abused its discretion when it determined that it had jurisdiction over the Petition to Modify.

■ The fact that Father has since relocated to Indiana with the children, consistent with the trial court's order, cannot affect our consideration of this issue.[6] UCCJA jurisdiction is determined on the date that the petition to modify is filed. *Sudvary,* 804 N.E.2d at 859. In *Sudvary,* the father lived in Indiana and filed his petition to modify custody in Indiana, but he moved to Illinois before the court ruled on his petition. *Id.* at 856. The mother then filed an objection to the court's jurisdiction, which the court overruled. *Id.* We affirmed the court's jurisdiction determination, holding "that the date Father filed his petition to modify is dispositive in determining jurisdiction under the [UCCJA]." *Id.* at 859.

Here, it appears that the court determined that its original jurisdiction continued because no other court has assumed jurisdiction. Although this logic is attractive, the statute does not provide support for it. Subsection (a)(1) of Indiana Code Section 31–17–3–3 does not confer jurisdiction upon the court because Indiana was not the children's home state in August 2004. *See* I.C. § 31–17–3–3(a)(1). Subsection (a)(2) requires that at least one of the contestants have a signification connection with the State, and neither Mother nor Father did. *See* I.C. § 31–17–3–3(a)(2). Likewise, Subsection (a)(3) is inapplicable because the children were not abandoned. *See* I.C. § 31–17–3–3(a)(3). Finally, subsection (a)(4) confers jurisdiction where "it appears that no other state would have jurisdiction under" subsections (a)(1), (a)(2), or (a)(3) "*or* another state has declined to exercise jurisdiction" on an inconvenient forum basis. *See* I.C. § 31–17–3–

---

6. According to the parties' statements, Mother has complied with the court's modification order. Both parties state that the trial court denied Mother's Motion to Stay Proceedings Pending Appeal, and Mother states that the children have moved to Indiana to live with Father.

3(a)(4) (emphasis added). As discussed above, Virginia would have had jurisdiction as the children's home state when Father filed his petition. Thus, the Indiana court erred by assuming jurisdiction.

Father contends that *In re Paternity of R.A.F.*, 766 N.E.2d 718 (Ind.Ct.App.2002), supports the court's assumption of jurisdiction over his petition. But that case is different because the father lived in Indiana when he filed his emergency petition for custody of his children. *Id.* at 720. The mother and father never married but had two children, and the mother filed a paternity petition in Indiana, but shortly after that, had moved to Arizona with the children. *Id.* The parties filed an Agreed Order on paternity in the Indiana court, which also entered an order on custody, support and visitation. *Id.* at 721. Eventually, the mother was unable to care for the children, and Arizona authorities removed the children from the mother's care and placed them in a foster home. *Id.* The father filed an emergency petition for custody in Indiana, which the court granted. *Id.* at 722. "Because the Indiana court entered the original custody determination in the paternity action, *and because Father continues to reside in Indiana,* the Indiana court had continuing jurisdiction of custody matters concerning R.A.F. and J.L.F. despite their relocation to Arizona with Mother." *Id.* at 723–24 (emphasis added).

In *Hepner*, we considered jurisdiction in an interstate custody case under an earlier version of the UCCJA. *Hepner*, 469 N.E.2d at 780. There, the mother and father divorced in Indiana, and the court awarded their child's physical custody to the mother in the dissolution decree. *Id.*

The mother and child subsequently moved to Illinois with the court's permission, and more than six months after that move, the mother filed an emergency petition in an Illinois court. *Id.* The father then filed a petition in the Indiana court. *Id.* at 781–82. Without considering whether it had jurisdiction, the Indiana court granted the father's petition and later issued other orders. *Id.* at 782. The mother moved for a stay of the proceedings in Indiana because there were simultaneous proceedings in Illinois, which the Indiana court denied. *Id.* at 783. Despite the fact that the Indiana court "could arguably have had jurisdiction under" under the UCCJA, we vacated its orders because the court failed to address whether it had jurisdiction. *Id.* at 783, 786.

■ Through the passage of time, by operation of law, Indiana may now be the children's home state, but the court did not have jurisdiction over Father's Petition when he filed it. "When a court lacks subject matter jurisdiction, its actions are *void ab initio* and may be challenged at any time." *Allen v. Proksch*, 832 N.E.2d 1080, 1095 (Ind.Ct.App.2005). As noted above, Mother timely objected to the court's jurisdiction, and the court overruled her objection. The court never reviewed Mother's contention that the children had a home state that was not Indiana. Just as in *Hepner*, "[t]he Indiana court lacked power to act because of its failure to seriously address the issue of its jurisdiction under the [UCCJA]." *Hepner*, 469 N.E.2d at 786. Thus, we are constrained to vacate the court's modification order.[7] *Id.*

---

7. Because we determine that the court had no jurisdiction over Father's Petition to Modify, we do not address Mother's claim that the court erred when it modified custody. However, our ruling on jurisdiction does not mean that we disagree with the court's determination on the merits.

### Issue Three: Appellate Attorney's Fees

█ Father contends that he is entitled to appellate attorney's fees because of Mother's noncompliance with the Appellate Rules. Appellate Rule 66(E) states: "The Court may assess damages if an appeal ... is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." App. R. 66(E). "Requests for awards of appellate attorney's fees have been categorized as 'procedural,' for flagrant violations of appellate procedure, and 'substantive,' for appellate arguments that are utterly devoid of all plausibility." *Graycor Industrial v. Metz*, 806 N.E.2d 791, 801 (Ind.Ct.App.2004), *trans. denied.*

█ We temper our determination to allow appellate attorney's fees "so as not to discourage innovation or periodic reevaluation of controlling precedent." *Potter v. Houston*, 847 N.E.2d 241, 249 (Ind.Ct.App. 2006) (citing *Orr v. Turco Mfg. Co.*, 512 N.E.2d 151, 152 (Ind.1987)).

> Notwithstanding the harmful delay occasioned by crowded judicial dockets and limited resources, we cannot fail to recognize that the imposition of punitive sanctions does have significant negative consequences. It may punish, and will deter, the proper exercise of a lawyer's professional responsibility to argue for modification or reversal of existing law. It will have a chilling effect upon the exercise of the right to appeal. It will discourage innovation and inhibit the opportunity for periodic reevaluation of controlling precedent.

*Orr*, 512 N.E.2d at 152 (applying former App. R. 15(G)). Thus, we limit our discretion to award attorney's fees under Appellate Rule 66 to occasions "when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Potter*, 847 N.E.2d at 249 (quoting *Boczar v. Meridian St.*

*Found.*, 749 N.E.2d 87, 95 (Ind.Ct.App. 2001)).

Father argues that he is entitled to appellate attorney's fees because Mother's conduct constitutes procedural bad faith. Mother's conduct throughout this appeal did not comply with our appellate rules. Nevertheless, Father was able to identify the issues raised and respond appropriately. Further, it does not appear that she prosecuted this appeal to harass Father or delay compliance with court's modification order. Her noncompliance is not the type of flagrant violation of the rules that would support a finding of bad faith under the "procedural bad faith" classification. *See Quigg Trucking v. Nagy*, 770 N.E.2d 408, 413 (Ind.Ct.App.2002). Further, Mother preserved and prevailed on the one issue which controls the outcome of this appeal. Thus, we cannot say that Mother's conduct in this appeal warrants the award of appellate attorney's fees, and we deny Father's request.

Judgment vacated, and cross-appeal denied.

MATHIAS, J., and BRADFORD, J., concur.