# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 03 2018, 5:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Holly J. Wanzer
Nicole Makris
WANZER EDWARDS, PC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Amy O. Carson
MASSILLAMANY JETER & CARSON LLP
Fishers, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Paternity of K.W. (Minor Child):

K.P.,

*Appellant-Respondent,*

v.

W.W.,

*Appellee-Petitioner.*

May 3, 2018

Court of Appeals Case No. 49A02-1711-JP-2639

Appeal from the Marion Superior Court

The Honorable James B. Osborn, Judge

Trial Court Cause No. 49D14-1701-JP-1552

**Bailey, Judge.**

# Case Summary

[1] K.P. ("Mother") appeals an order placing eight-year-old K.W. in the physical custody of W.W. ("Father"). We address a single, consolidated issue for review: whether the custody order was entered without affording Mother due process. We reverse and remand for further proceedings.

# Facts and Procedural History

[2] On October 14, 2009, K.W. was born out-of-wedlock to Mother and Father. Mother and Father had long been involved in an on-and-off romantic relationship. Their eldest child, W.T.W., was ten years old when K.W. was born.[1] Over the years, Father and Mother maintained separate homes in Indianapolis, and their romantic relationship continued to be on-and-off. Father sometimes had an access code or key to Mother's residence and stayed there. Father also purchased a residence in Ohio, where he has full-time employment.

[3] When W.T.W. was a high school sophomore, he decided that he wanted to reside exclusively with Father in Ohio. Father obtained custody of W.T.W. through legal proceedings in Ohio. In 2013 or 2014, "when W.T.W. came to

---

[1] W.T.W. is now emancipated and living in Ohio. K.W. and W.T.W. also have a half-sibling who is a few years older than K.W. and is Father's child from another relationship.

live with Father," Mother's and Father's romantic relationship ended. (Tr. Vol. I, pg. 114.) K.W. remained with Mother.

[4] On January 10, 2017, Father filed a Verified Emergency Petition Regarding Denial of Parenting Time and Motion to Establish Custody, Parenting Time and Child Support. Father sought sole physical custody of K.W. and planned to move her to Ohio and enroll her in a private parochial school there. The parties reached an interim agreement permitting Father to exercise significant, almost half-time, overnights with K.W.

[5] The trial court conducted hearings on October 10 and October 20, 2017. The parties stipulated to the amount of time to be allotted for the presentation of evidence. Three minutes before his time expired, Father was called as a rebuttal witness and proffered Exhibit 26 – consisting of 202 pages purportedly depicting text messages between the parties. The trial court excluded this proffered exhibit for lack of foundation. However, after the hearing was adjourned on October 20, 2017, the trial court entered an Admission Order of the same date. The order reversed the trial court's exclusion of Father's Exhibit 26.

[6] Four days later, on October 24, 2017, the trial court issued an order providing in relevant part:

> It is in the best interests of the Child that Father and Mother share joint legal custody of the Child with Father exercising primary physical custody. If there is an impasse on a decision, Father shall make the final determination.

(Appealed Order at 1.) The trial court, which had indicated by its commentary and exclusion of certain evidence that it was making an initial custody determination based only upon best interests of the child, did not enter findings related to a change in circumstances to support custody modification. Mother now appeals.

## Discussion and Decision

[7] Mother alleges that she was denied due process. She argues that the trial court failed to enter adequate findings based upon the appropriate legal standard for making the custody determination and that the trial court's sua sponte post-trial admission of evidence deprived her of any opportunity to challenge the belatedly-admitted evidence.

[8] Procedural due process must be provided to protect the substantive rights of the parties in child custody proceedings, and an opportunity to be heard on veracity and probity of that considered by the trial court is essential before a parent can be deprived of custody. *Jendreas v. Jendreas*, 664 N.E.2d 367, 370 (Ind. Ct. App. 1996) (citing *Van Etta v. Van Etta*, 583 N.E.2d 767, 768 (Ind. Ct. App. 1991), *trans. denied*. Also, the relevant statutes contemplate that a parent will not be deprived of custody without an evidentiary hearing to determine whether there has been a substantial change in one or more of the factors relevant to the child's best interests and whether modification would in fact be in the child's best interests. *In re Paternity of R.A.F.*, 766 N.E.2d 718, 726 (Ind. Ct. App. 2002).

[9]     Indiana Code Section 31-14-13-2 provides that the court shall make an initial custody determination in a paternity case by looking at all relevant factors, including the factors listed in subsections (1) through (8) of the statute, to determine the best interests of the child.  Those factors are:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parents;
>>
>> (B) the child's siblings; and
>>
>> (C) any other person who may significantly affect the child's best interest.
>
> (5) The child's adjustment to home, school and community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.
>
> (8) Evidence that the child has been cared for by a de facto custodian[.]

[10]     Indiana Code Section 31-14-13-6 prescribes a stricter standard for modification of a child custody order in a paternity action. A custody order may be modified only if it is in the best interests of the child and there is a "substantial change in one (1) or more of the factors that the court may consider under [Ind. Code § 31-14-13-2 or 31-14-13-2.5]…" Ind. Code § 31-14-13-6.

[11]     In an initial custody determination, there is no presumption in favor of either parent and the trial court's determination is to be based upon the best interests of the child. *See in re Paternity of Winkler*, 725 N.E.2d 124, 127 (Ind. Ct. App. 2000). However, to obtain a modification of custody, the burden is on the petitioner to demonstrate a substantial change in circumstances. *Id.* The stricter rationale is required because permanence and stability are deemed crucial for the wellbeing and happiness of the child. *Id.*

[12]     In determining whether an initial custody determination standard or modification standard is appropriate, we look to the unique facts of the case. *Id.* In *Winkler*, the father acquiesced to Mother having custody of the child for ten years and the mother had custody by operation of law because the child was born out of wedlock. *See id.* (citing Ind. Code § 31-14-13-1, which provides that "[a] biological mother of a child born out of wedlock has sole legal custody of the child, … unless a statute or court order provides otherwise[.]"). In those circumstances, we found the more stringent standard for modification of custody to be applicable despite the lack of an initial court determination. *See id.* at 128.

[13]     Here, there has not been a prior court order concerning K.W.'s custody. Mother had custody of K.W. by operation of law and Father acquiesced to Mother's physical custody of K.W. for seven years before he filed his petition. In *Winkler*, we recognized that "the same concerns about stability and continuity" arose in the context of a long-standing custody arrangement even absent an "initial custody determination" by a court. *Id.* The *Winkler* Court held: "after a long acquiescence by a father in a paternity context, a trial court may not send a child to live with the other parent unless there is a showing pursuant to Ind. Code § 31-14-13-6." *Id.* Although we recognize that Father's acquiescence here is for a lesser term of years than was the father's in *Winkler*, it is nonetheless a long acquiescence and Mother was deprived of custody she had long exercised. The trial court was obliged to go beyond a best interests inquiry, i.e., the court should have allowed relevant evidence to support consideration of whether there was a substantial change in one or more of the statutory factors.

[14]     Also, Mother claims that she was afforded no meaningful opportunity to be heard when the trial court made a sua sponte post-hearing decision to admit Father's Exhibit 26. On the final hearing day, Father brought to court a compilation of 202 pages purportedly depicting text messages between the parents. During cross-examination of Mother, Father's counsel asked Mother to recite her cellular telephone number and Mother did so. Father's counsel sought to admit the exhibit during Mother's testimony but, after objection from Mother's counsel, indicated that the exhibit would be proffered during Father's

rebuttal testimony. At some point, the hearing was adjourned for five minutes to permit Mother to review the 202 pages.

[15] Father was called as a rebuttal witness and the trial court cautioned that he had three minutes remaining to present evidence. Father testified that he had printed out texts that had been "on his current phone" using an application called WhatsApp. (Tr. Vol. II, pg. 77.) Father was unable to provide detail about the application; he did not testify to specific dates covered by Exhibit 26; and he did not establish the cellular number used by himself or Mother during the dates appearing on Exhibit 26. The trial court excluded the proffered exhibit because of lack of foundation to support its admission.

[16] The trial court's post-hearing order indicated that, upon review of the authority of *In re Paternity of B.B.*, 1 N.E.3d 151 (Ind. Ct. App. 2013), the trial court had found Exhibit 26 to be admissible. There, a panel of this Court discussed admissibility of transcribed text messages between parents:

> When the substance of a text message is offered for an evidentiary purpose, the text message must be separately authenticated pursuant to Ind. Evidence Rule 901(a). *Hape v. State*, 903 N.E.2d 977, 990 (Ind. Ct. App. 2009), *trans. denied*. Rule 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Absolute proof of authenticity is not required. *Fry v. State*, 885 N.E.2d 742, 748 (Ind. Ct. App. 2008), *trans. denied*. When evidence establishes a reasonable probability that an item is what it is claimed to be, the item is admissible. *Thomas v. State*, 734 N.E.2d 572, 573 (Ind. 2000).

*In re B.B.*, 1 N.E.3d at 156. The father in that case had acknowledged that the telephone numbers were his and the mother's; the mother had described the evidentiary exhibit as consisting of texts sent between her and the father. *See id.* at 156-58. We found that there was sufficient evidence to support a finding that the text messages were what the mother claimed them to be, and that a sufficient foundation had been laid for their admission. *Id.* at 159. Accordingly, we found no abuse of discretion in the trial court's decision to admit them. *Id.*

[17] Be that as it may, we are not reviewing for an abuse of discretion the trial court's decision to admit evidence over one party's objection at a hearing. Rather, we are confronted with a post-hearing reversal of a decision on admissibility which, by its procedural irregularity and lack of specificity,[2] denied Mother the opportunity to be heard. We agree with Mother that she was not afforded procedural due process in this regard. *See Paternity of R.A.F.*, 766 N.E.2d at 726 ("An opportunity to be heard is essential before a parent can be deprived of custody.").

---

[2] It is not apparent whether the trial court found all or less than all the texts to be relevant or to what extent the trial court relied upon the substance of any of the texts in making its custody determination.

# Conclusion

[18]    The trial court's blanket exclusion of evidence of a substantial change in circumstances and post-hearing reversal of an evidentiary ruling deprived Mother of a meaningful opportunity to be heard.

[19]    Reversed and remanded for further proceedings consistent with this opinion.


Crone, J., and Brown, J., concur.