


FILED

Oct 14 2025, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Emily Winchester,

*Petitioner-Appellant*

v.

Zackery Winchester,

*Respondent-Appellee*

---

October 14, 2025

Court of Appeals Case No.
25A-DC-1199

Appeal from the Allen Superior Court

The Honorable Jesus R. Trevino, Magistrate

Trial Court Cause No.
02C01-2504-DC-346

---

**Opinion by Judge Kenworthy**
Judges Foley and Scheele concur.

**Kenworthy, Judge.**

## Case Summary

Emily Winchester ("Mother") and Zackery Winchester ("Father") are the parents of two minor children ("Children"). Father is a member of the United States Air Force ("USAF"), and the family was stationed at a base in the United Kingdom beginning in 2023. In 2025, Mother and Children returned to Indiana. Father initiated custody proceedings in the United Kingdom, and Mother initiated custody proceedings in Indiana. Mother appeals the trial court's decision that Indiana may not exercise jurisdiction over custody matters under the Uniform Child Custody Jurisdiction Act ("UCCJA"). Mother also appeals the trial court's order to return Children to the United Kingdom under the Hague Convention. We reverse and remand.

## Facts and Procedural History[1]

Mother and Father were married in Indiana and lived here until Father enlisted in the USAF. After Father's enlistment, the family lived in several locations as directed by the USAF. In late 2023, they moved to a base in the United Kingdom.

---

[1] Mother's Appendix does not conform to Appellate Rule 50(A), as it does not include the chronological case summary or copies of all pleadings from the Clerk's Record necessary for resolution of the issues raised on appeal. That said, we take judicial notice of the CCS and necessary pleadings as noted below, which are available from the trial court's dockets in Odyssey. *See* Ind. Evidence Rule 201(a)(2)(C) (providing a court may take judicial notice of the existence of records of a court of this state).

[3] In September 2024, Mother reported domestic violence by Father to the USAF Family Advocacy Program. As a result, Father was removed from the family's residence on September 30. A series of temporary No Contact Orders prohibiting Father from contacting Mother and Children was issued and eventually replaced by a non-expiring Military Protective Order.

[4] In early 2025, the USAF approved Mother's and Children's return to the United States and arranged for their travel. Mother unenrolled Children from their on-base schools. Mother and Children left the United Kingdom on March 14, 2025, and flew to Indiana. They moved in with Mother's parents in Fort Wayne.

[5] Also on March 14, Father initiated a custody proceeding in the Family Court at Norwich in the United Kingdom ("UK Court") and a "without notice urgent hearing" was held on that day with only Father and his solicitor appearing. *Appellant's App. Vol. 2* at 15. The UK Court determined it "has jurisdiction in relation to the children based on habitual residence." *Id.* at 16. The Prohibited Steps and Specific Issue Order ("March Order") prohibited Mother from removing Children from the jurisdiction of England and Wales and ordered her to re-enroll Children in their schools on base. Mother learned of this order when she landed in the United States.

[6] On or about March 25,[2] Father petitioned the trial court to register and enforce the March Order. Unaware of this filing, Mother filed a separate action in the trial court on March 28 asking the court to exercise emergency jurisdiction under the UCCJA and grant her temporary custody of Children.[3] The two cases were later consolidated. On April 7, the trial court directed the March Order to be filed as an order of the Allen Circuit Court. Mother timely objected,[4] and the trial court set a hearing for May 16 to address all pending matters.

[7] Before the hearing was held, the UK Court issued a Child Arrangements Order reiterating its jurisdiction and ordering Mother to do certain things regarding Children, including providing a welfare update and making Children available to spend time with Father via electronic means. Father moved to register this order with the trial court as well. The trial court did not rule on this motion but included it in the matters to be considered at the hearing. Father also filed with the trial court—without a corresponding motion or explanation—an application he had signed on March 24 and submitted to the International Child Abduction and Contact Unit ("ICACU") in the United Kingdom.

---

[2] This petition does not appear in the Appellant's Appendix, but it is available from the trial court's docket in this cause number. There are two identical petitions; one filed on March 25 and one on March 26.

[3] This motion also does not appear in the Appellant's Appendix, but it is available through the trial court's docket in the separate cause number.

[4] Pursuant to statute, Mother had twenty days to contest the validity or enforcement of the registered order. *See* Ind. Code § 31-21-6-4 (addressing procedure for registering a child custody determination from another state).

[8] At the hearing, Mother, Father, and one of the children testified to events that culminated in Mother and Children leaving the United Kingdom. Mother and Father also testified to their contacts with Indiana before and during Father's military service. And Father testified about the legal steps he took in response to Children's return to Indiana. The trial court found it did not have jurisdiction under the UCCJA because the United Kingdom was Children's home state; Mother could not meet the requirements for the trial court to exercise temporary emergency jurisdiction under the UCCJA; and Father's application to the ICACU "triggers the Hague Convention[.]" *Appellant's App. Vol. 2* at 4. Accordingly, the trial court ordered:

- Father's ICACU Form "is granted and the Court implements the Hague Convention for the return of the children to the United Kingdom";

- Father's petitions to register the two UK Court orders are granted;

- Mother's emergency motion to establish jurisdiction and custody is denied; and

- Mother is to return Children to the United Kingdom within fifteen days.

*Id.* at 11–12.

## Standards of Review

We first note Father has not filed an appellate brief. When an appellee has not filed a brief, "we need not undertake the burden of developing an argument on the appellee's behalf." *Trinity Homes, LLC v. Fang,* 848 N.E.2d 1065, 1068 (Ind. 2006). "[W]e will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Id.* Prima facie error is error "at first sight, on first appearance, or on the face of it." *Id.* (citation omitted). If an appellant is unable to meet this burden, we will affirm.

In reaching its decision, the trial court entered findings of fact and conclusions under Indiana Trial Rule 52(A) at Mother's request. We apply a two-tiered standard of review: we determine first whether the evidence supports the findings and, if so, whether the findings support the judgment. *Town of Linden v. Birge*, 204 N.E.3d 229, 233 (Ind. 2023). We do not reweigh the evidence or reassess witness credibility, and we will not set aside the findings or judgment unless they are clearly erroneous. Ind. Trial Rule 52(A). Findings are clearly erroneous if the record contains no facts or inferences supporting them. *State v. Int'l Bus. Mach. Corp.*, 51 N.E.3d 150, 158 (Ind. 2016). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* We review the court's legal conclusions and interpretation of statutes *de novo. Gittings v. Deal*, 109 N.E.3d 963, 970 (Ind. 2018).

## The trial court did not comply with the UCCJA in ruling on the parties' motions.

[11] Mother asserts three errors in the trial court's decision under the UCCJA: first, the trial court erred by not following the statutory procedures required by the UCCJA; second, the trial court erred in declining to exercise emergency jurisdiction; and third, the trial court erred in determining Indiana was not Children's home state. The first issue is dispositive.

[12] An Indiana court's jurisdiction to decide custody matters having an interstate dimension is governed by the UCCJA. *See Gard-Holm v. Holm*, 258 N.E.3d 289, 294 (Ind. Ct. App. 2025), *trans. denied*; I.C. art. 31-21 (2007). Importantly for this case, an Indiana court "shall treat a foreign country as if the foreign country were a state of the United States" when applying the jurisdictional provisions of the UCCJA. I.C. § 31-21-1-3(a). It provides a procedural framework to avoid courts from different states issuing contradictory child custody orders. *Gard-Holm*, 258 N.E.3d at 294; *see also Harris v. Harris*, 922 N.E.2d 626, 640 (Ind. Ct. App. 2010) (stating the purpose of the UCCJA "is to avoid jurisdictional competition and conflict with courts of other states in matters of child custody"). Under the UCCJA, the court that first makes a child custody determination[5] has exclusive jurisdiction over child custody matters until the child and all parties have left the state. *Westenberger v. Westenberger*, 813 N.E.2d

---

[5] A "child custody determination" is defined as a judgment, decree, or other court order providing for legal custody, physical custody, or visitation with respect to a child. I.C. § 31-21-2-4.

343, 345 (Ind. Ct. App. 2004), *trans. denied*. But a court with exclusive jurisdiction may decline to exercise its jurisdiction if it determines a different forum is in a better position to entertain the litigation. *In re Paternity of R.A.F.*, 766 N.E.2d 718, 724 (Ind. Ct. App. 2002), *trans. denied*.

[13]     An Indiana court has an affirmative duty to question its jurisdiction when it becomes aware there is an interstate dimension to a child custody dispute. *Gard-Holm*, 258 N.E.3d at 294. First, the Indiana court must determine whether a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in conformity with the UCCJA. *Shoemaker v. Shoemaker*, 192 N.E.3d 909, 912 (Ind. Ct. App. 2022); *see* I.C. § 31-21-5-6(a) (stating an Indiana court "may not exercise its jurisdiction under this article if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this article") (emphasis added). If there is such a proceeding in another state, the Indiana court is to stay its proceeding and communicate with the court of the other state. *Shoemaker*, 192 N.E.3d at 912; *see* I.C. § 31-21-5-6(b).[6] Finally, a determination must be made as to which court is the more appropriate forum. *Shoemaker*, 192 N.E.3d at 912; *cf.* I.C. § 31-21-5-6(b) (stating if the court of the other state "does not determine

---

[6] Indiana Code Section 31-21-4-1 expressly authorizes *ex parte* communications by the court in this circumstance. *See* I.C. § 31-21-4-4 (noting that other than communication between courts about schedules, calendars, court records, and similar matters, a record of the communication must be made and the parties must be promptly informed of the communication and granted access to the record).

that the Indiana court is a more appropriate forum, the Indiana court shall dismiss the proceeding").

[14] For at least three reasons, the trial court's order with respect to the UCCJA is clearly erroneous. First, although "a child custody determination made in a foreign country *under factual circumstances in substantial conformity with the jurisdictional standard of this article* must be recognized and enforced," I.C. § 31-21-1-3(b) (emphasis added), the "jurisdictional standard" includes notice and opportunity to be heard before a child custody determination is made, I.C. § 31-21-5-5(a). The UCCJA specifically states it "does not govern the enforceability of a child custody determination made without notice or an opportunity to be heard." I.C. § 31-21-5-5(b). The trial court found the UK Court determined "Mother had notice of the UK Action on March 12, 2025. Therefore, the Court finds Mother had notice" of the UK Court proceedings. *Appellant's App. Vol. 2* at 5 (finding 31). This finding is clearly erroneous, as there are no facts in the record to support it. The March Order states twice that it was issued following a "*without notice* urgent hearing." *Id.* at 15 (emphasis added). The UK Court in its later Child Arrangements Order stated, "[I]t appears . . . [Mother] had been expressly warned by Solicitor's correspondence dated 12 March 2025 that the removal" of Children from the United Kingdom "was not agreed and could be a criminal offense." *Appellant's App. Vol. 2* at 74. But a warning of possible consequences in a solicitor's correspondence is not equivalent to notice of the date and time of a hearing or even notice that a custody action had been initiated. *See id.* at 4 (trial court finding that "Father's solicitor in the United

Kingdom sent Mother correspondence informing her that the UK action had commenced"). And based on the erroneous findings, the trial court erroneously concluded it was required to recognize and enforce the UK Court's orders because the UK Court exercised jurisdiction under factual circumstances in substantial conformity with the UCCJA jurisdictional standards. *See id.* at 9 (conclusion 50).

[15] Second, the trial court did not comply with the procedural requirements of Indiana Code Section 31-21-5-6(b), requiring the trial court to stay its proceedings and communicate with the other court when it became aware a custody proceeding has been filed in another state. When Mother filed her emergency motion to establish jurisdiction and custody, the trial court already had before it Father's petition to register the March Order in which the UK Court asserted jurisdiction over Children due to their habitual residence in the United Kingdom.[7] Yet the trial court did not stay the proceedings and there is no indication it communicated with the UK Court before having a hearing and issuing an order on the Indiana custody proceedings. *See Appellant's App. Vol. 2* at 10 (trial court finding "there is no information that the United Kingdom has declined to exercise jurisdiction since issuing the last order"). Accordingly, there was no opportunity for consideration of whether the Indiana court was

---

[7] "Home state" is defined in part by the UCCJA as "the state in which a child lived with (1) a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." I.C. § 31-21-2-8. Mother argues as an issue of first impression that Indiana should be considered Children's home state because they were only living in the United Kingdom due to Father's military service. Because we determine the trial court's order is clearly erroneous on another basis, we need not decide this issue.

the more appropriate forum to exercise jurisdiction. *See Shoemaker*, 192 N.E.3d at 912; *see also* I.C. § 31-21-5-8 (enumerating factors to be considered in determining whether a court of a state is an inconvenient forum).

[16] And third, the provisions of Section 31-21-5-6 for simultaneous proceedings apply *except* as provided in Section 31-21-5-4. Section 31-21-5-4 grants an Indiana court temporary emergency jurisdiction if the child is present in Indiana and it is necessary to protect the child because the child, the child's sibling, or the child's parent is subjected to or threatened with mistreatment or abuse. I.C. § 31-21-5-4(a). Mother asked the trial court to exercise this temporary emergency jurisdiction and argues on appeal it was error for the trial court not to do so. Similar to the procedural requirements of Section 31-21-5-6(b), *supra* ¶ 15, if an Indiana court has been asked to make a child custody determination under Section 31-21-5-4 and is informed that a child custody proceeding has been commenced in or a child custody determination has been made by a court of another state, the Indiana court "shall immediately communicate with the other court." I.C. § 31-21-5-4(g). The trial court did not do so before ruling on Mother's request for it to exercise emergency jurisdiction.

[17] Mother has shown prima facie error in the trial court's orders regarding the UCCJA. The trial court's decisions under the UCCJA are clearly erroneous for failing to apply the correct legal standard. We reverse the trial court's rulings

on the UCCJA and remand for the trial court to proceed according to the dictates of the UCCJA.[8]

## The trial court's findings on the Hague Convention are clearly erroneous.

[18] Under the 1980 Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), "a child wrongfully removed from her country of 'habitual residence' ordinarily must be returned to that country." *Monasky v. Taglieri*, 589 U.S. 68, 70–71 (2020). The Hague Convention, as implemented in the United States through the International Child Abduction Remedies Act ("ICARA"), seeks to address "the problem of international child abductions during domestic disputes," and it operates on the "core premise that 'the interests of children . . . in matters relating to their custody' are best served when custody decisions are made in the child's country of 'habitual residence.'" *Id*. at 71–72. In part, ICARA states,

> Any person seeking to initiate judicial proceedings under the
> Convention for the return of a child or for arrangements for
> organizing or securing the effective exercise of rights of access to
> a child may do so by commencing a civil action by filing a
> petition for the relief sought in any court which has jurisdiction
> of such action and which is authorized to exercise its jurisdiction

---

[8] We note that Mother sought to stay the trial court's order that she return Children to the United Kingdom in the trial court and later in this Court. After this Court's Motions Panel denied the stay, Mother sought reconsideration, submitting evidence that Father was imminently being reassigned to a base in the United States. *See* Exhibit 11 to Motion to Reconsider (filed June 17, 2025). We do not rely on this information herein, but on remand, we direct the trial court to allow the parties to present evidence of changed circumstances since the May hearing in addition to communicating with the UK Court.

in the place where the child is located at the time the petition is filed.

22 U.S.C. § 9003(b) (1988). The UCCJA provides that an Indiana court "may enforce *an order* for the return of the child made under the Hague Convention on the Civil Aspects of International Child Abduction as if it were a child custody determination." I.C. § 31-21-6-1 (emphasis added).

[19] Mother argues the trial court erred in relying on the Hague Convention in the absence of a petition seeking Children's return to the United Kingdom. We agree: the trial court addressed the Hague Convention when it had no cause to do so. In its order, the trial court "granted" Father's ICACU form and found "[p]ursuant to Article 12 [of the Hague Convention], the Court shall Order the children returned to the United Kingdom forthwith since the proceeding was commenced less than one (1) year from the wrongful removal of the children from the United Kingdom." *Appellant's App. Vol. 2* at 7, 11. But Father's ICACU application was not a petition for Children's return under the Hague Convention or an order for Children's return. It was an administrative request by Father for the Central Authority in the United Kingdom to assist in securing the voluntary return of Children. *See* Hague Convention, Art. 8, [https://perma.cc/KT27-THFE]; *see also* Hon. James D. Garbolino, Federal Judicial Center, *The 1980 Hague Convention on the Civil Aspects of International Child Abduction: A Guide for Judges* 29 (3d ed. 2023), [https://perma.cc/LM95-NCYF] (noting there are two methods for requesting the return of a child: administrative requests to the Central Authority and court proceedings;

"Central Authorities have no independent powers to compel the child's return; if a Central Authority's negotiations fail, the left-behind parent must make a timely application to a court where the child is located and secure a court order for the child's return").[9]

From this record, there is no indication Father has initiated a court proceeding in any state or federal court under the Hague Convention or received an order directing Children's return. As a result, Mother has shown prima facie error in the trial court's judgment granting the ICACU application and ordering Children's return under the Hague Convention. The judgment as to the Hague Convention is reversed.

## Conclusion

The trial court's judgment is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

Foley, J., and Scheele, J., concur.

ATTORNEYS FOR APPELLANT

---

[9] Signatories to the Hague Convention must designate a Central Authority "to discharge the duties which are imposed by the Convention upon such authorities." Hague Convention, Art. 6. The Central Authority for England is the ICACU. *See* HCCH: United Kingdom – Central Authority, [https://perma.cc/8NGV-FEQR].

Suzanne M. Wagner
Katherine L. Geist
HallerColvin PC
Fort Wayne, Indiana